IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA          :
:
:
:
:
:          CRIMINAL ACTION NO.
:          1:18-cr-00260-LMM-CMS-1
v.                                :
:
:
ANTHONY RONDEL BLAIR,             :
:
        Defendant.                :
:
:

## ORDER

This case comes before the Court on the Magistrate Judge's Report and Recommendation [292] that Defendant Anthony Rondel Blair's Motion to Suppress Evidence Pursuant to Franks v. Delaware [161] be denied. After due consideration, the Court enters the following Order:

## I.    BACKGROUND

A Second Superseding Indictment charges Defendant with money laundering and various offenses involving cocaine: importing, conspiring to import, attempting to possess with intent to distribute, and conspiring to possess with intent to distribute. Dkt. No. [53] at 1–7. The investigation that led to this indictment began on February 5, 2018. On that date, law enforcement officials detained Shedarian Pearson, Summer Swartz, and Sequoya Quixote after the trio

arrived at Miami International Airport from Costa Rica. Dkt. No. [223-1] ¶ 10. After finding several kilograms of apparent cocaine in Swartz and Quixote's luggage, agents took all three travelers into custody and questioned them after they waived their Miranda rights. Id. ¶¶ 11–12. Based largely on information provided by Pearson, Swartz, and Quixote, the next day a Magistrate Judge issued the search warrant Defendant challenges here.

Special Agent Roy C. Rutherford submitted an affidavit in support of the Government's application for that warrant. According to him, Swartz stated Defendant had represented he was a travel agent and offered to pay for Swartz's entire trip (plus a per diem) if Swartz brought "souvenirs" back to the United States. Id. ¶ 13. Pearson averred that Defendant had coordinated and "paid for all of the arrangements regarding [Swartz, Pearson and Quixote's] travel and stay in Costa Rica," including Swartz's passport and a per diem. Id. ¶¶ 14, 15, 17.

According to Pearson, Defendant wanted the three to "contact him once they arrived" at their hotel in Costa Rica and "to be normal tourists" while there. Id. ¶ 16. Defendant, Pearson said, "explained that someone would be bringing them souvenirs to their hotel room." Id. Quixote stated that on the last day of their trip, a Dominican man arrived at their hotel room, unpacked Pearson and Swartz's luggage,

> put the "souvenirs" at the bottom of the bag[s], repacked their personal items, and then placed a pillow on top of everything. The man also took a picture of the luggage and told them that the way the luggage was packed at that time is the way it should arrive in the United States.

Id. ¶ 18. Pearson, Swartz, and Quixote were "not to go out their last day at the resort" and were "not to touch the souvenirs." Id. ¶ 16. Swartz and Pearson stated that Defendant had planned to meet them and retrieve the souvenirs from their bags when they landed in Atlanta. Id. ¶ 19.

While in custody in Miami, and at Special Agent Rutherford's direction, Swartz told Defendant via text message that she, Pearson, and Quixote had landed in Atlanta. Id. ¶ 20. When Defendant arrived at the airport, agents stopped Defendant's vehicle and, after confirming his identity, took him into custody. Id. ¶ 22. Agents found approximately $2,100 in cash and a cell phone inside the vehicle. Id. While Defendant was in custody, agents in Miami instructed Swartz to send a text message to Defendant. Id. ¶ 23. A notification containing Swartz's phone number then appeared on the cell phone agents had recovered from Defendant's vehicle. Id.

Special Agent Rutherford submitted this information to a Magistrate Judge, who on February 6, 2018 signed a warrant authorizing the seizure of several categories of information on the phone "that may relate to violations of" 21 U.S.C. §§ 841(a), 846, 952(a), 960(a)(1), 960(b)(2)(B), and 963. Id. at 18. Defendant moves to suppress evidence obtained via that warrant and requests an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978), to support his Motion. Dkt. No. [161]. After full briefing, see Dkt. Nos. [223], [225], the Magistrate Judge recommended Defendant's Motion be denied, Dkt. No. [292]. Defendant timely objected to the Report and Recommendation. See Dkt. No.

[295]. The time for the Government to respond to Defendant's objection has passed, and the matter is thus ripe for the Court's review. See LR 7.1(C).

## II.    LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate Judge's Report and Recommendation for clear error if no objections are filed. 28 U.S.C. § 636(b)(1). If a party files objections, the district court must review *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id. As Mr. Blair has filed an objection to the Magistrate Judge's findings, the Court reviews the challenged findings and recommendations on a *de novo* basis.

## III.    DISCUSSION

"[T]he affidavit supporting [a] search warrant" enjoys "a presumption of validity." Franks, 438 U.S. at 171.

> In order to be entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit, a defendant must make a substantial preliminary showing that the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false, and that the false statements were necessary to the finding of probable cause.

United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009). Accordingly, a court must disregard "arguably false or misleading" statements, consider any omitted statements, and then determine whether the affidavit still "support[s] a finding of probable cause." Id. (quoting United States v. Novaton, 271 F.3d 968, 986 (11th Cir. 2001)). If it does, no Franks hearing is required. Id.

Defendant argues several omissions warrant a hearing. First, Swartz said Defendant had told her she would "get to keep everything, all the souvenirs" and that "whatever they put in the bag [Swartz] would get to keep." Dkt. No. [161] at 2. Second, Pearson claimed the man who brought the souvenirs said "[e]verything you're taking is yours." Id. at 3. Third, Quixote played for law enforcement a recording of a phone conversation with Defendant in which Defendant stated Quixote would "get a chance to keep" the souvenirs. Id. at 4. Fourth, Quixote told agents the Dominican man had told them he ran a "luggage security business," and that he was giving the travelers "free souvenirs . . . to take home" to test whether anyone would tamper with the luggage in transit. Id. Quixote also said Defendant had claimed he intended to inspect the trio's luggage to ensure no tampering had occurred. Id.

Additionally, Defendant claims the affidavit materially misrepresented Defendant's statements to Swartz and Pearson. According to the affidavit, Swartz and Pearson said Defendant had told them he would take possession of the souvenirs when they arrived in Atlanta. Dkt. No. [223-1] ¶¶ 16, 19. Defendant says Swartz never made any such statement and Pearson "never directly communicated with" Defendant about the souvenirs. Dkt. No. [161] at 3. Instead, Pearson "only heard of [Defendant's] alleged instructions from Swartz and through overhearing Swartz and Quixote's telephone conversations with [Defendant]." Id.

Defendant argues these alleged misrepresentations and omissions are material because Defendant could not have imported cocaine without at least attempting to "tak[e] possession" of the souvenirs. Id. at 6. In Defendant's view, statements that Swartz, Pearson, and Quixote could keep the items placed in their luggage cuts against the idea that Defendant used the three to import cocaine. According to Defendant, "[t]here can be no scheme to import drugs if the alleged importer never takes the drugs from the alleged couriers." Id. at 7.

The Magistrate Judge correctly rejected this argument. First, it is legally incorrect: As the Magistrate Judge noted, the statutes referenced in the warrant criminalize importing or conspiring to import controlled substances regardless whether one takes possession of those substances. See Dkt. No. [292] at 11 n.4; 21 U.S.C. §§ 846, 952(a), 960(a)(1), 960(b)(2)(B), and 963. Second, even leaving aside the misrepresentations and omissions Defendant alleges, Special Agent Rutherford's affidavit amply supports a finding of probable cause to search Defendant's phone for evidence of the warrant's specified crimes. Defendant does not dispute that he paid for the trip to Costa Rica; instructed Swartz, Pearson and Quixote to contact him once there; knew someone would bring them "souvenirs"; told the three not to touch the souvenirs; told the three not to leave the resort on the day they received the souvenirs; and attempted to meet the them upon their

arrival.[1] The totality of this uncontested information provides probable cause to believe Defendant financed and coordinated Swartz, Pearson, and Quixote's trip to facilitate the importation of cocaine, not simply to see whether anyone would tamper with items in their luggage.

Defendant argues the affidavit does not suggest he *knew* the Dominican man packed drugs in Swartz and Quixote's luggage. Dkt. No. [295] at 2. However, when read in a "realistic and commonsense" way the affidavit provides probable cause to believe Defendant was aware of what the "souvenirs" contained. United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994); see also Illinois v. Gates, 462 U.S. 213, 236 (1983) ("[C]ourts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." (alterations omitted) (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965))). The affidavit also contains multiple pieces of evidence indicating Defendant communicated with Swartz using the phone targeted by the warrant. Thus, Defendant has not made a substantial preliminary showing that any misstatements or omissions were critical to a finding of probable cause. See Kapordelis, 569 F.3d at 1309. "[T]here remains sufficient content in the warrant

---

[1] Defendant's appearance at the airport aligns with the affidavit's assertion that Defendant told Swartz, Pearson, and Quixote he would pick them up in Atlanta and take the souvenirs out of their luggage. Dkt. No. [223-1] ¶ 16.

affidavit to support a finding of probable cause, [and] no hearing is required."[2]

<u>Franks</u>, 438 U.S. at 172.

## IV.   CONCLUSION

In light of the foregoing, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [292] as the opinion of this Court. Defendant Anthony Rondel Blair's Motion to Suppress Evidence Pursuant to <u>Franks v. Delaware</u> [161] is **DENIED**.


**IT IS SO ORDERED** this <u>4th</u> day of June, 2021.

_____
**Leigh Martin May**
**United States District Judge**

---

[2] The Court additionally notes that Defendant has supplied no evidence that Special Agent Rutherford acted intentionally or recklessly. Defendant's Motion states only that the statements Special Agent Rutherford omitted are so clearly "critical to a finding of probable cause" that the Court may infer recklessness from their omission. Dkt. No. [161] at 5 (quoting <u>Madiwale v. Savaiko</u>, 117 F.3d 1321, 1327 (11th Cir. 1997)). As the Court has found that the affidavit provides probable cause even after considering the omissions Defendant identified, Defendant's argument on this point fails. <u>See</u> <u>Madiwale</u>, 117 F.3d at 1327 ("insignificant and immaterial" omissions "will not invalidate a warrant").