IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : :  : : : : : CRIMINAL ACTION NO. : 1:18-cr-00260-LMM-CMS-1 : v. : : : ANTHONY RONDEL BLAIR, : : Defendant. : : : |

# ORDER

This case comes before the Court on the Magistrate Judge's Report and Recommendation [306] that Defendant Anthony Rondel Blair's Motions to Suppress Evidence [33, 45] and Motion to Bar Out-of-Court Identification [44] be denied. Pursuant to 28 U.S.C. § 636(b)(1), Defendant filed Objections to the Report and Recommendation ("R&R") [310]. After due consideration, the Court enters the following Order:

**I.    BACKGROUND**

A Second Superseding Indictment charges Defendant with money laundering and various offenses involving cocaine: importing, conspiring to import, attempting to possess with intent to distribute, and conspiring to possess

with intent to distribute. Dkt. No. [53] at 1–7. The R&R thoroughly chronicles the investigation that led to this indictment, which the Court summarizes below.[1]

On February 5, 2018, law enforcement officials detained Summer Swartz, Shadarian Pearson, and Sequoya Quixote after the group arrived at Miami International Airport from Costa Rica. Dkt. No. [254] at 15–16. In Ms. Swartz and Mr. Quixote's bags agents found five cans, which contained a "paste-like substance" that field-tested positive for cocaine hydrochloride. Id. at 17. When agents discovered the cocaine, they took Ms. Swartz, Ms. Pearson, and Mr. Quixote into custody. Id.

Agents interviewed Ms. Swartz, who immediately named Defendant as the "person 'in control of everything.'" Dkt. No. [306] (quoting Dkt. No. [298-1] at 4:22–5:04). Ms. Swartz said that Defendant described himself as a travel agent, had paid for her airfare and hotel, and gave her $250 to spend in Costa Rica. Id. (citations omitted); Dkt. No. [254] at 19. Before her trip, Ms. Swartz said, she communicated with Defendant through phone calls, text messages, and FaceTime. Dkt. No. [254] at 20. According to Ms. Swartz, in one of these communications Defendant asked her to send a picture of the bag she planned to

---

[1] The following facts are taken from the transcript of the evidentiary hearing before the Magistrate Judge and the R&R's summary of recorded witness interviews. Defendant does not dispute that the Magistrate Judge accurately recounted these interviews.

2


bring to Costa Rica. Dkt. No. [254] at 19. When she did so, Defendant told her to bring a larger bag.[2] Id.

According to Ms. Swartz, Defendant told her, Ms. Pearson, and Mr. Quixote that the objective of their trip was to bring souvenirs back to the United States. Id. at 20. When the trio arrived in Costa Rica, Ms. Swartz said, they were to tell Defendant which hotel room was theirs. Id. Ms. Swartz said Defendant told her that on the last night of the trip, someone would bring souvenirs to their room, pack them inside their bags, and photograph the bags.[3] Id. According to Ms. Swartz, this occurred as scheduled: A man brought several souvenirs to their room, including the cans seized at the airport, packed them, and said that the travelers could keep everything. Dkt. No. [306] at 4. Ms. Swartz, Ms. Pearson, and Mr. Quixote were not to touch their bags after they had been packed, Ms. Swartz said. Dkt. No. [254] at 20. When they arrived in Atlanta, Defendant would meet them at the airport, inspect their bags, and ask them to complete a survey for his travel agency. Id. at 20–21, 100. Ms. Pearson and Mr. Quixote corroborated Ms. Swartz's description of the trip. Id. at 21.

---

[2] In a later interview, Ms. Pearson described a similar encounter with Defendant at a gas station. According to her, Defendant arranged the trip, provided $300 to spend during the trip, and offered to give her a suitcase. Dkt. No. [306] at 9.

[3] It is unclear whether Defendant told Ms. Swartz that she, Ms. Pearson, and Mr. Quixote could keep all the souvenirs they were given. Like the Magistrate Judge, the Court assumes Defendant did so.

After searching a law enforcement database, agents found a color photo of a man named Anthony Rondel Blair, who was pictured with dreadlocks. Id. at 23; Dkt. No. [296-1]. When agents presented the photo to Ms. Swartz and Ms. Pearson, both identified the man in the photo as the individual with whom they had coordinated their trip, Dkt. No. [254] at 24, though Ms. Pearson said she did not believe that person had dreadlocks, id. at 37.

Based on all this information, agents devised a plan to apprehend Defendant in Atlanta. When Ms. Swartz, Ms. Pearson, and Mr. Quixote had been scheduled to land, agents directed Ms. Swartz to text Defendant that the three had arrived. Id. at 26. Defendant appeared at the airport as planned. Agents stopped Defendant's vehicle and, after confirming his identity,[4] took him into custody. Id. at 26–29. Agents also recovered a cell phone from Defendant's vehicle. While Defendant was in custody, agents in Miami instructed Ms. Swartz to send a text message to Defendant. Id. at 31. She did so, and a notification containing Ms. Swartz's phone number appeared on the lock screen of the phone. Id. at 31–32.

After Defendant declined to consent to a search of the phone, an agent successfully guessed the passcode. Id. at 31. At that point, Special Agent Roy C.

---

[4] Agents photographed Defendant's driver's license and sent that picture to the agents detaining Ms. Swartz, Ms. Pearson, and Mr. Quixote in Miami. When shown the photo of Defendant's driver's license, Ms. Pearson immediately identified the person in the photo as the man she had met at the gas station. Dkt. No. [306] at 10.

Rutherford immediately disabled the phone from receiving cellular signals and recorded the phone's identifying information. Id. at 32–33. The next day, Special Agent Rutherford obtained a warrant to search Defendant's phone. See Dkt. No. [278-1]. When agents executed the warrant, they learned that Defendant had arranged trips to Costa Rica for about 60 other people. Defendant also had contact with a man named Jason Arias, who was in Costa Rica at the same time as Ms. Swartz, Ms. Pearson, and Mr. Quixote. Dkt. No. [254] at 44. Mr. Arias discussed certain travelers with Defendant, including Madison Kelleher and David Lomba Barros. Id. at 44. Ms. Kelleher and Mr. Barros had previously been stopped at an airport on their way to Costa Rica and were found with dozens of cans and a large quantity of cash. Id. at 45–46.

Four months later, on June 10, 2018, customs agents in Atlanta searched the luggage of a traveler named Michelle Rosa, who was returning from Costa Rica, and found several cans containing cocaine hydrochloride paste. Id. at 52. Ms. Rosa told Special Agent Rutherford about a plan that closely resembled the arrangement Ms. Swartz described, and said Mr. Arias placed the cans in her bag. See id. at 53–54. Agents believed Mr. Barros would retrieve the cans from Ms. Rosa at her apartment. Id. at 57. Instead, Defendant—who Ms. Rosa did not know—arrived. Id. Special Agent Rutherford arrested Defendant at Ms. Rosa's door and walked him out to the apartment's parking lot. Id. at 58. Before Mirandizing Defendant, Special Agent Rutherford asked him which car was his,

and Defendant identified a particular vehicle. Id. An agent opened the vehicle's door and retrieved a cell phone from the main cabin. Id. at 59.

Following his indictment, Defendant submitted motions to suppress (i) evidence obtained from his cell phone on February 5, 2018, Dkt. No. [33], (ii) Ms. Swartz and Ms. Pearson's identifications of him, Dkt. No. [44], and (iii) evidence obtained in connection with his arrest on June 10, 2018, Dkt. No. [45]. Following an evidentiary hearing, Dkt. No. [254], and post-hearing briefing from Defendant and the Government, Dkt. Nos. [265, 278], the Magistrate Judge recommended denying all three motions, Dkt. No. [306]. Defendant has timely objected to the Magistrate Judge's findings, Dkt. No. [310], and the matter is now ripe for the Court's review.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate Judge's Report and Recommendation for clear error if no objections are filed. 28 U.S.C. § 636(b)(1). If a party files objections, the district court must review *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id. As Defendant has filed an objection to the Magistrate Judge's findings, the Court reviews the challenged findings and recommendations *de novo*.

## III.   DISCUSSION

### A.   Motion to Suppress Evidence from February 5 Cell Phone Seizure

Defendant offered two grounds for the suppression of evidence obtained from his phone on February 5. First, he argued the agents who arrested him at

the airport did not have probable cause, rendering their subsequent seizure of his phone unlawful. Dkt. No. [265] at 14–15. Second, he claimed that, even if there was probable cause for his arrest, agents warrantlessly searched his phone by causing a notification from Ms. Swartz to appear and by unlocking the phone without his consent. Id. at 15–16. The Magistrate Judge found that Defendant's arrest was amply supported by probable cause and that the agents' use of Defendant's phone did not affect the validity of the search warrant they later obtained. Dkt. No. [306] at 16–21.

Defendant's objections reiterate the arguments he made before the Magistrate Judge. It is "critical," he claims, that he had not told Ms. Swartz, Ms. Pearson, or Mr. Quixote that he intended to keep the "souvenirs" placed in their bags. Dkt. No. [310] at 2. He argues there was probable cause to believe the three travelers conspired to import cocaine, but not that Defendant knew they had cocaine in their bags. Id. at 3. Further, he claims agents "manipulated" his phone, and says the exclusionary rule is meant to deter the kind of warrantless cell phone search at issue here. Id. at 4.

The Court agrees with the Magistrate Judge that the evidence from Defendant's cell phone should not be suppressed. With respect to probable cause, Ms. Swartz's statements to investigators provided substantial evidence that Defendant had conspired to import cocaine. She described a trip financed and coordinated by Defendant—who she identified by name—and said Defendant knew someone would pack "souvenirs" in the travelers' luggage while they were

in Costa Rica. Defendant argues Ms. Swartz could not be trusted, but Ms. Pearson and Mr. Quixote told consistent stories. See Dkt. No. [254] at 21 (interrogating agent's testimony that "[a]ll three individuals in sum and substance basically said the same thing"). Furthermore, as the Magistrate Judge noted, Defendant arrived at the airport in Atlanta just as Ms. Swartz said he would, which corroborated her narrative. Dkt. No. [306] at 18. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). If "a prudent person [would] believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense," there is probable cause for arrest. Wilkerson v. Seymour, 736 F.3d 974, 978 (11th Cir. 2013) (citation omitted). Regardless whether Defendant told Ms. Swartz that he intended to take the souvenirs, the information available to agents at the time of Defendant's arrest supplied probable cause.[5]

Next, the Magistrate Judge correctly concluded that agents did not "manipulate" Defendant's phone in any way that would taint the Government's search warrant. Special Agent Rutherford's warrant affidavit did not contain any information he observed on Defendant's phone after agents guessed the phone's passcode. See Dkt. No. [278-1]. And Defendant offers no authority for his

---

[5] Additionally, as the Court noted in a prior Order, several statutes "criminalize importing or conspiring to import controlled substances regardless whether one takes possession of those substances." Dkt. No. [307] at 6 (citing 21 U.S.C. §§ 846, 952(a), 960(a)(1), 960(b)(2)(B), and 963).

8

assertion that agents' observation of Ms. Swartz's phone number on his phone's lock screen constituted a search. The Fourth Amendment generally requires a warrant to search a cell phone's *contents*; as the Magistrate Judge noted, information that simply appears on a lock screen, without requiring digital entry, is in plain view. United States v. Brixen, 908 F.3d 276, 281–82 (7th Cir. 2018) (citing Riley v. California, 573 U.S. 373 (2014)) (analyzing notification that appeared on cell phone's lock screen); see also Jackson v. McCurry, 762 F. App'x 919, 927 (11th Cir. 2019) (per curiam) ("*Riley* held only that the exception to the warrant requirement for searches incident to arrest does not extend to searches of information *contained in* cellphones . . . ." (emphasis added)); Minnesota v. Dickerson, 508 U.S. 366, 374–75 (1993) (describing the plain view doctrine). Thus, neither agents' observation of Ms. Swartz's phone number, nor information obtained through the search warrant are subject to suppression. Defendant's objections to the contrary are **OVERRULED**.[6]

### B.  Motion to Suppress Out-of-Court Identifications

Defendant challenges the admissibility of Ms. Swartz and Ms. Pearson's identifications of him during their interrogation in Miami. He argues that because agents presented Ms. Swartz and Ms. Pearson only with photographs of

---

[6] Additionally, the Court notes that Special Agent Rutherford's warrant affidavit—which contained information from agents' interviews of Ms. Swartz, Ms. Pearson, and Mr. Quixote—would have amply supported a finding of probable cause to search Defendant's phone even if he omitted his observation of Ms. Swartz's phone number. Dkt. No. [306] at 20; see United States v. Albury, 782 F.3d 1285, 1291 (11th Cir. 2015) (explaining that warrants may be valid even when partially supported by illegally obtained evidence).

him—a procedure known as a "show-up," see Stovall v. Denno, 388 U.S. 293, 302 (1967)—any identifications based on those photographs should be excluded, and Ms. Swartz and Ms. Pearson should be barred from identifying Defendant at trial. Dkt. No. [265] at 17.

The Court examines eyewitness identifications for violations of due process using a two-step test. First, the Court "ask[s] whether the original identification procedure was unduly suggestive." United States v. Mathurin, 868 F.3d 921, 928–29 (11th Cir. 2017) (citation omitted). Then, "[i]f [it] conclude[s] that it was, [it] then consider[s] whether, under the totality of the circumstances, the identification was nonetheless reliable." Id. The reliability analysis involves five factors: "(1) opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification." United States v. Diaz, 248 F.3d 1065, 1102 (11th Cir. 2001) (citing Neil v. Biggers, 409 U.S. 188, 199 (1972)).

The Magistrate Judge concluded that even if Defendant's presentation to Swartz and Pearson in show-ups was unduly suggestive, it was reliable, and therefore admissible. Dkt. No. [306] at 23–24. Defendant objects that both show-ups were unduly suggestive and unreliable, and points out that agents showed Swartz a photo of Defendant that included Defendant's name. Dkt. No. [310] at 4.

Defendant also argues that any later identifications made by Swartz and Pearson were tainted by these show-ups and must also be suppressed. Id.

The Court again agrees with the Magistrate Judge's sound analysis. As an initial matter, it is far from clear that Defendant's show-up presentation to Ms. Swartz and Ms. Pearson was unduly suggestive. Although show-ups are suggestive, they "are not unnecessarily [so] unless the police aggravate the suggestiveness of the confrontation." Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987). There is no indication of such aggravation here; agents did not, for example, suggest that Defendant was the man they had arrested "or otherwise pressure [Ms. Swartz or Ms. Pearson] to make an identification." Masse v. Sec'y, Fla. Dep't of Corr., 700 F. App'x 890, 894 (11th Cir. 2017) (per curiam); see also Perry v. New Hampshire, 565 U.S. 228, 242 (2012) ("[T]he Court has linked the due process check . . . only to improper police arrangement of the circumstances surrounding an identification.").

However, even if the show-ups were unduly suggestive, it is clear from the totality of the circumstances that Swartz and Pearson's identifications were reliable. Although Defendant does not elaborate on this point in his objection, his post-hearing brief argued that Ms. Swartz and Ms. Pearson had limited contact with Defendant before their arrest, and especially limited in-person contact. See Dkt. No. [265] at 19–20. But as the Magistrate Judge noted, Ms. Swartz and Ms. Pearson both had opportunities to see Defendant. Dkt. No. [306] at 23. Ms. Swartz had multiple FaceTime calls with him, and Ms. Pearson met him in

person at a gas station. See Dkt. No. [254] at 22–23, 94. Defendant does not dispute that he had Ms. Swartz and Ms. Pearson's full attention during these encounters, which concerned the trip to Costa Rica. Nor does Defendant dispute that Ms. Swartz and Ms. Pearson accurately described him. Ms. Pearson noted that Defendant no longer wore the dreadlocks that appeared in the photo she was given, id. at 86, and Ms. Swartz correctly identified Defendant as a Black male who drove a sport utility vehicle, id. at 22. Both correctly told agents that Defendant was from the Atlanta area. Id. at 23. Importantly, both Ms. Swartz and Ms. Pearson identified Defendant "with certainty." Id. at 36. Thus, while Ms. Swartz and Ms. Pearson had not seen Defendant immediately before they identified him, the totality of the circumstances indicate that their identifications of Defendant were reliable.[7] Defendant's objections as to his Motion to Suppress these identifications are **OVERRULED**.

    **C.**     **Motion to Suppress Evidence Obtained from June 10, 2018 Arrest**

Defendant's final Motion argues that all evidence obtained from his arrest at Ms. Rosa's apartment on June 10, 2018—particularly the cell phone retrieved from his car—should be suppressed. Defendant proffers three arguments in support: first, that he was arrested without probable cause; second, that agents

---

[7] Because agents' use of a show-up did not deprive Defendant of due process, the Court need not address Defendant's argument that the procedure tainted later identifications. Nonetheless, the Court notes that when Ms. Swartz was later shown a photo array that included Defendant, she "immediately identified [him] as the person who had sent her and paid for her trip to Costa Rica." Dkt. No. [254] at 47.

12

used statements obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), to locate the phone; and third, that agents could not take the phone from his car without a warrant. Dkt. No. [265] at 16–17. The Magistrate Judge found that agents had several reasons to believe Defendant had come to Ms. Rosa's apartment to advance a drug-trafficking conspiracy. Dkt. No. [306] at 25. The Magistrate Judge further held that agents would have located Defendant's phone even without his un-Mirandized statements, and that they retrieved the phone during a valid search incident to arrest.

Objecting to the Magistrate Judge's finding of probable cause, Defendant claims agents "had no basis to believe [he] was still involved" in the importation of cocaine when he arrived at Ms. Rosa's apartment. Dkt. No. [310] at 5. Defendant points out that Ms. Rosa implicated Mr. Arias and Mr. Barros in a cocaine importation scheme, but not him. Id. However, agents had learned from their prior search of Defendant's phone that Defendant had planned numerous trips to Costa Rica and had communicated with Mr. Arias. Agents also knew that Mr. Barros had transferred money to Defendant's bank account. Dkt. No. [254] at 45. Ms. Rosa transported cocaine from Costa Rica in the same way as Ms. Swartz, Ms. Pearson, and Mr. Quixote, and had coordinated with Mr. Barros to give him the drugs at her apartment. When Defendant unexpectedly arrived instead, agents had probable cause to believe he was there to retrieve the imported cocaine.

As Defendant notes, after he was arrested and before agents issued a Miranda warning, Special Agent Rutherford asked him to identify his car. Dkt. No. [310] at 5. However, the Supreme Court has long recognized an "inevitable discovery" exception to the exclusionary rule, which "allows for the admission of evidence that would have been discovered even without the unconstitutional source." Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016) (citation omitted). To trigger this exception, the government must "establish a reasonable probability that the evidence in question would have been discovered by lawful means," and "that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." United States v. Johnson, 777 F.3d 1270, 1274 (11th Cir. 2015) (citation omitted). Importantly, the "active pursuit" element "does not require that police have already planned the particular search that would obtain the evidence. The government must instead establish that the police would have discovered the evidence 'by virtue of ordinary investigations of evidence or leads already in their possession.'" Id. (quoting United States v. Virden, 488 F.3d 1317, 1323 (11th Cir. 2007)).

The Magistrate Judge correctly determined that agents would have obtained Defendant's phone even without Defendant's assistance. At the evidentiary hearing, Special Agent Rutherford testified that he had already located Defendant's keys during a search incident to arrest. Dkt. No. [254] at 58. He said that had Defendant not cooperated, he would have taken Defendant's

keys and pressed the "unlock" button on the key fob. Id. At that point, agents would have been able to determine which car belonged to Defendant.

Defendant does not dispute that these were legal means of locating evidence. Instead, he argues it is "pure speculation" that unlocking the car would have "alerted the agents to its presence." Dkt. No. [310] at 6. But the Government need only "establish by a preponderance of the evidence" that Defendant's keys would have allowed agents to find his car. Virden, 488 F.3d at 1322. The notion that Defendant's car, like many others, would have visibly or audibly responded when Special Agent Rutherford pressed the "unlock" button clearly meets this threshold. In these circumstances, the inevitable discovery exception applies.

Finally, agents obtained Defendant's phone from his vehicle during a valid search incident to arrest. Where, as here, an arrestee is not "within reaching distance of the passenger compartment at the time of the search," a vehicle may be searched incident to arrest only if it "is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 556 U.S. 332, 351 (2009). As noted above, when Defendant unexpectedly arrived at Ms. Rosa's apartment, agents had probable cause to believe Defendant had conspired with Mr. Arias or Mr. Barros to import cocaine. Agents knew Defendant had previously communicated with both men. Yet, when Special Agent Rutherford searched Defendant's person incident to his arrest, he did not find a cell phone. Dkt. No. [254] at 58. It was therefore reasonable to believe that Defendant's vehicle contained a cell phone, which would in turn contain evidence of a

conspiracy to import cocaine. For all these reasons, Defendant's objections are **OVERRULED**.

## IV.   CONCLUSION

In light of the foregoing, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [306] as the opinion of this Court. Defendant's Objections [310] are **OVERRULED**. Defendant's Motions to Suppress Evidence [33, 45] and Motion to Bar Out-of-Court Identification [44] are **DENIED**.

The trial in this action is hereby set to begin on **Monday, November 29, 2021 at 1:30 P.M.** in Courtroom 2107. The pretrial conference will be held on Wednesday, November 10, 2021 at 10:00 A.M. in Courtroom 2107. By noon on Wednesday, October 27, 2021, the parties are to file the following: motions *in limine* and proposed *voir dire* questions. By noon on Wednesday, October 27, 2021, the Government must file a brief summary of the indictment that the parties can rely on for *voir dire*. By noon on Wednesday, November 3, 2021, the parties are to file responses to motions *in limine* and any objections and to those items listed above.

Excludable time is allowed through November 29, 2021, pursuant to 18 U.S.C. § 3161 (h)(7)(A) and (B)(iv), to give counsel for Defendant and the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. The Court finds that the ends of justice served outweigh the best interest of the public and the Defendant in a speedy trial

and are consistent with both the best interest of the public and individual justice in this matter.

**IT IS SO ORDERED** this 18th day of August, 2021

_____
**Leigh Martin May**
**United States District Judge**